UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| THE ANCIENTREE CABINET CO., LTD<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Court No. 23-262 |

**PLAINTIFF'S RULE 56.2 MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
J. Kevin Horgan
**deKIEFFER & HORGAN, PLLC**
Suite 1101
1156 Fifteenth Street, N.W. 20005
Tel: (202) 783-6900
email: gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Dated: May 29, 2024

**TABLE OF CONTENTS**


**I. RULE 56.2 STATEMENT ..... 1**

**A. Administrative Determination Subject to Appeal ..... 1**

**B. Issues Presented ..... 1**

**II. Introduction and Factual Background ..... 1**

**III. Standards of Review ..... 3**

**IV. ARGUMENT ..... 5**

**A. The Department's Failure To Increase The U.S. Sales Price Of Subject Merchandise By the Amount Of The Export Buyer's Credit Export Subsidy Program Is Contrary To Law ..... 5**

**B. The Court Should Find the Exhaustion Requirement is Waived under the Circumstances ..... 6**

**C. The Department's Decision not to Make the Adjustment and Reject Ancientree's Ministerial Error Comment for Failure to Exhaust was an Abuse of Discretion and Contrary to Law ..... 9**

**V. Conclusion and Prayer for Relief ..... 12**

# TABLE OF AUTHORITIES

## Cases

*Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024 (Fed. Cir. 2007) ................................. 7-8

*Am. Farm Lines v. Black Ball Freight Serv*., 397 U.S. 532 (1970) ..............................................11

*Anderson v. U.S. Sec'y of Agriculture*, 462 F. Supp. 2d 1333 (2006)...........................................10

*Apex Frozen Foods Private Ltd. v. United States*, 862 F.3d 1322 (Fed. Cir. 2017)........................7

*Changzhou Trina Solar Energy Co. v. United States*, 393 F. Supp. 3d 1245 (Ct. Int'l Trade 2019) ..........................................................................................................................................5

*Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318 (Fed. Cir. 2020) ..................5

*Civil Aeronautics Bd. v. Delta Air Lines*, Inc., 367 U.S. 316 (1961)............................................10

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003) ..........................................3

*Goodluck India Ltd. v. United States*, 670 F. Supp. 3d 1353 (Ct. Int'l Trade 2023).............. 10-11

*Indiana Utility Regulatory Comm'n v. FERC*, 668 F.3d 735 (U.S. App. D.C. 2012)......................9

*Itochu Bldg. Prods. v. United States*, 733 F.3d 1140 (Fed. Cir. 2013)...........................................7

*Koyo Seiko Co. v. United States*, 186 F. Supp. 2d 1332 (Ct. Int'l Trade 2002) .............................8

*Luoyang Bearing Corp. v. United States,* 347 F. Supp. 2d 1326 (Ct. Int'l Trade 2004) .................7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).................3, 10

*Ningbo Dafa Chemical Fiber Co. v. United States*, 580 F.3d 1247, 1259 (Fed. Cir. 2009)...........9

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995)...........................................10

*Pakfood Public Co. Ltd. v. United States,* 724 F. Supp. 2d 1327 (Ct. Int'l Trade 2010) ................7

*Portland General Electric*, 501 F.3d 1009 (9th Cir. 2007) ...........................................................9

*Public Citizen Health Research Group v. Comm'r, FDA,* 740 F.2d 21 (D.C. Cir. 1984) ...............7

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990) ..........................................6

*SeAH Steel Corp. v. United States*, 34 C.I.T. 605 (2010) ........................................................... 11

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001) ................................................... 3

*SNR Roulements v. United States*, 402 F.3d 1358 (Fed Cir. 2005) ................................................ 3

*Zhaoqing Tifo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328 (Ct Int'l Trade 2015) ........... 9

**Statutes & Regulations**

19 U.S.C. § 1516a(b)(1)(B) .............................................................................................. 3

19 U.S.C. §1677a(c)(1)(c) ............................................................................................ *passim*

28 U.S.C. § 2637(d) ........................................................................................................ 7

19 C.F.R. 351.224(c)(1) .................................................................................................. 2

19 CFR 351.309(c)(2) ...................................................................................................... 2

**Administrative Decisions**

*Alloy and Certain Carbon Steel Threaded Rod From the People's Republic of China: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review; 2022-2023*, 89 Fed. Reg. 35,069 (May 1, 2024) ........................................................... 5

*Aluminum Extrusions From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 38,031 (May 7, 2024) ..................................... 5

*Certain Aluminum Foil From People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2022-2023*, 89 Fed. Reg. 35,801 (May 2, 2024) .................................................................................... 4-5

*Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 Fed. Reg. 47,902 (August 10, 2015) ................................................................. 4

*Crystalline Silicon Photovoltaic Cells Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 36,886 (July 30, 2019) ...................................................................................................................... 4

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination,* 85 Fed. Reg. 11,962 (Feb. 28, 2020) .................................................................................................................................. 5-6

# I. RULE 56.2 STATEMENT

Pursuant to Rule 56.2 (c)(1), Plaintiff The Ancientree Cabinet Co., Ltd., ("Ancientree" or "Plaintiff") hereby states the administrative decision subject to appeal and the issues of law presented:

## A. Administrative Determinations Subject to Appeal

The U.S. Department of Commerce (the "Department") published its contested final results in the Federal Register on November 7, 2023. *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Results and Final Determination of No Shipments of the Antidumping Duty Administrative Review; 2021–2022*, 88 Fed. Reg. 76,729 (November 7, 2023) PD336[1], *incorporating* Issues & Decision Memorandum ("IDM"), PD321.

## B. Issues Presented

1. Issue One: Whether the Department's failure to increase the U.S. sales price of subject merchandise by the 10.54% amount of the Export Buyer's Credit ("EBC") export subsidy was contrary to law?

2. Issue Two: Whether the Department's rejection of Ancientree's ministerial error comment was arbitrary and an abuse of discretion or contrary to the exhaustion doctrine?

# II. Introduction and Factual Background

In the Preliminary and Final Results, the Department failed to increase the U.S. sales price of subject merchandise by the amount of a known export subsidy, the Export Buyer's

[1] "PD" indicates public documents on the Department's administrative record in this case; "CD" indicates confidential documents on the Department's administrative record.

Credit ("EBC") program but also provided no explanation for its departure from law and practice in this regard. This adjustment is required by statute. 19 U.S.C. §1677a(c)(1)(c). When the Department failed to make the routine and mandatory adjustment in the Final Results, Plaintiff filed a ministerial error comment. PD337. Plaintiff explained that as the adjustment is required under the law, this was a clear ministerial error. 19 C.F.R. §351.224(f) (2016) (defining a "ministerial error" as an error "in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which the Secretary considers ministerial.").

The Department rejected Ancientree's ministerial error comment, citing to 19 C.F.R. 351.224(c)(1) and 19 CFR 351.309(c)(2). Dep't Rejection of Ancientree Ministerial Error (November 20, 2023); PD338. 19 C.F.R. 351.224(c)(1) states that "[c]omments concerning ministerial errors made in the preliminary results of a review should be included in a party's case brief." 19 CFR 351.309(c)(2) states that a "case brief must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results...." Notably, the Department did not disagree that the ministerial error was ministerial in nature and also did not disagree that the adjustment for the EBC program was required by statute. The Department only rejected Ancientree's ministerial error because Ancientree did not raise it in a case brief. In the Final Results, the Department did not make the statutorily required adjustment to Ancientree's AD margin and continued to apply an inaccurate and unlawful double remedy rate to Ancientree.

The Department's Final Results are thus contrary to law in that the Department did not make the required adjustment to U.S. sales price, leading to the application of a double remedy on Ancientree's entire U.S. sale file and resulting dumping margin. The Department's Final

Results are also contrary to law because the Department abused its discretion in rejecting Ancientree's ministerial error comments given the statutory requirement to make the adjustment and the consideration of the exhaustion doctrine.

**III. Standards of Review**

This Court "shall hold unlawful any determination . . . found . . . to be unsupported by substantial evidence on the record or otherwise not in accordance with law.[2]

This Court will hold as unlawful any administrative decision that is arbitrary, capricious, or an abuse of discretion. *See* 19 U.S.C. § 1516a(b)(l)(A). Normally, an agency decision would be arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Moreover, Commerce acts arbitrarily and capriciously when it "consistently follow[s] a contrary practice in similar circumstances and provide[s] no reasonable explanation for the change in practice." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003). It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (alteration, quotation marks and citation omitted). An agency "must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs.*, 463 U.S. at 48 (citations omitted). Thus, when the administering agency's actions are internally

[2] 19 U.S.C. § 1516a(b)(1)(B)(i); *accord SNR Roulements v. United States*, 402 F.3d 1358, 1361 (Fed Cir. 2005).

inconsistent and self-contradictory, and the agency treats similarly situated parties differently or fails to consider an important aspect of a problem, the agency's decisions are arbitrary and capricious and subject to reversal.

## IV. ARGUMENT

### A. The Department's Failure To Increase The U.S. Sales Price Of Subject Merchandise By the Amount Of The Export Buyer's Credit Export Subsidy Program Is Contrary To Law.

In calculating the export price, the Department is ordered to increase the U.S. sales price of subject merchandise by the amount of any export subsidy found countervailable in the companion countervailing Order. Such an adjustment is not discretionary but it is required by statute. The statute directs the Department that:

> The price used to establish export price and constructed export price shall be
> (1) increased by ...
> (c) the amount of any countervailing duty imposed on the subject merchandise under part I of this subtitle to offset an export subsidy.

19 U.S.C. §1677a(c)(1)(c). The use of "shall" denotes a necessary requirement under the law.

Indeed, the Department makes this adjustment as a matter of course in accordance with the law in order to avoid double remedies when AD and CVD Orders apply to the same merchandise. *Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 Fed. Reg. 47,902 (August 10, 2015) and accompanying Double Remedies Calculation Memo (Offsetting the EBC program, Export Seller's Credit, and domestic subsidy that was passed through); *Crystalline Silicon Photovoltaic Cells Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 36,886 (July 30, 2019) and accompanying IDM at Comment 2 (finding the EBC program is

export contingent and offsetting the U.S. price for this program); *Aluminum Extrusions From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 38,031 (May 7, 2024) and accompanying Prelim. IDM at 30 (offsetting export subsidies, including the EBC program); *Certain Aluminum Foil From People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2022-2023*, 89 Fed. Reg. 35,801 (May 2, 2024) and accompanying Prelim. IDM at 24 (offsetting export subsidies, including the EBC program); *Alloy and Certain Carbon Steel Threaded Rod From the People's Republic of China: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review; 2022-2023*, 89 Fed. Reg. 35,069 (May 1, 2024) and accompanying Prelim. IDM at 14 (offsetting the EBC program). The Courts have also found that the Department must adjust for export subsidies. *Changzhou Trina Solar Energy Co. v. United States*, 393 F. Supp. 3d 1245, 1249-1250 (Ct. Int'l Trade 2019) ("Given that 19 U.S.C. § 1677a(c)(1)(C) uses the mandatory 'shall' to direct Commerce's actions as to offsets when Commerce imposes a countervailing duty and here Commerce imposed such a duty, the increase to Trina's U.S. selling prices by the amount countervailed to offset the export subsidy is in accordance with law."); *Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1328 (Fed. Cir. 2020) ("Commerce was required to increase Trina's export price by any countervailing duty imposed in the companion CVD investigation to offset an export subsidy.").

The EBC program, as seen clearly in the name **Export** Buyer's Credit program, is an export subsidy. The program is an alleged assistance from the Export-Import Bank of China to fund Chinese goods to be exported. The fact that this program is an export subsidy is not in

dispute and well established as seen in the cases cited above and in the companion countervailing Order to this review. *See also Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination,* 85 Fed. Reg. 11,962 (Feb. 28, 2020), and accompanying IDM at 77 (listing the EBC program among the export subsidies). Similarly, it is not in dispute that Ancientree's imports during the POR were subject to a 10.54% EBC export subsidy rate. *Id.*[3] [4] Accordingly, it was required under the law for the Department to adjust Ancientree's export price by the 10.54% subsidy. Notably, the Department does not deny that it was required to make this adjustment and did not deny that the allegation qualifies as a ministerial error, but rather only raised the exhaustion defense in response to the error allegation, discussed further below. PD338.

The Department's actions, regardless of the timing of the raising of the error, are still in violation of the law. The Department is required to make this adjustment to avoid double counting, and the Department failed to make this adjustment despite full advance knowledge of this error. 19 U.S.C. §1677a(c)(1)(c). The SAS programming fix to conform with the Department's actual practice is only a change to one line and is simple to implement. Specifically, line 1287 must be changed

From: Line 1287 GUPADJU = 0;

To: Line 1287 GUPADJU = (-0.1054 * &USGUP)

*See* Ancientree Final Analysis Memo (November 1, 2023); CD284, PD331.

Further, the Department is ordered to calculate dumping margins as accurately as

---

[3] Ancientree was not subject to the first or second countervailing administrative reviews, thus Ancientree's applicable countervailing rate (including the 10.54% EBC rate) during this antidumping review was the same as the investigation rate. In other words, Ancientree's U.S. sales price during this second antidumping administrative review included the 10.54% EBC export subsidy rate.

[4] We also note that Ancientree appealed the Department's finding that Ancientree benefited from the EBC program in the investigation. The issue remains on appeal in CIT 20-110.

possible. *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). The Department has knowingly assigned Ancientree an inaccurate margin that double counts an export subsidy. Accordingly, the Department's Final Results are contrary to law, facially inaccurate, and hence inappropriately punitive.

**B. The Court Should Find the Exhaustion Requirement is Waived under the Circumstances.**

The Department's sole reason for rejecting Ancientree's ministerial error comment and not making the required adjustment was due to Ancientree's failure to exhaust administrative remedies by not raising the issue in its administrative case brief. However, the exhaustion doctrine is inherently discretionary. 28 U.S.C. § 2637(d) provides that the courts shall, where appropriate, require exhaustion of administrative remedies. *See*, *e.g.*, *Apex Frozen Foods Private Ltd. v. United States*, 862 F.3d 1322, 1332 (Fed. Cir. 2017) ("[T]he application of exhaustion principles in trade cases is subject to the discretion of the judge of the Court of International Trade.") *quoting Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007). While the Courts have found that 28 U.S.C. § 2637(d) indicated a Congressional intent that, absent a strong contrary reason, parties should exhaust their remedies before the administrative agency, Congress did specifically choose to make it discretionary, recognizing the need to analyze the purpose of the exhaustion doctrine and the facts of each case.

The primary purposes of the exhaustion doctrine are to (1) ensure that parties do not contravene established administrative processes; (2) protect the autonomy of agency decision-making; (3) aid judicial review by permitting factual development of issues relevant to the dispute; and (4) serve judicial economy. *See Luoyang Bearing Corp. v. United States,* 347 F. Supp. 2d 1326, 1352 (Ct. Int'l Trade 2004) (citing *Public Citizen Health Research Group v. Comm'r, FDA,* 740 F.2d 21, 29 (D.C. Cir. 1984)). Where requiring exhaustion would not serve

any useful purpose, the Court has not hesitated from exercising its discretion to waive the requirement by applying various exceptions. *See Pakfood Public Co. Ltd. v. United States,* 724 F. Supp. 2d 1327, 1350-51 (Ct. Int'l Trade 2010) ("{A} party's failure to exhaust its administrative remedies should not preclude judicial review of its claims where the benefits of exhaustion are inapplicable or outweighed by other concerns."); *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013) ("The requirement that invocation of exhaustion be "appropriate," however, requires that it serve some practical purpose when applied. Inquiry into the purposes served by requiring exhaustion in the particular case, and any harms caused by requiring such exhaustion, is needed to determine appropriateness."). Based upon the purposes of the exhaustion doctrine, judicially recognized exceptions to the requirement to raise all issues in an administrative case brief have been well-established. One of these exceptions is clearly applicable to this case.

Exhaustion is not required where a court is asked to consider a "pure question of law" and "Commerce has not persuasively articulated . . . how additional proceedings would further develop the interpretation offered. . . ." *Agro Dutch Indus., Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007); *see also Koyo Seiko Co. v. United States*, 186 F. Supp. 2d 1332, 1338 (Ct. Int'l Trade 2002) (exhaustion is not required when "the question is one of law and does not require further factual development and, therefore, the court does not invade the province of the agency by considering the question").

The issue of whether to increase Ancientree's U.S. sales price by the amount of the EBC export subsidy program is a clear matter of pure law. The requirement to make this adjustment is undisputed law. 19 U.S.C. §1677a(c)(1)(c). The fact that the EBC program is an export subsidy is undisputed fact. *See supra* page 5. The fact that Ancientree's sales are subject to this EBC

rate in the companion countervailing Order is undisputed fact. *See supra* page 5. Accordingly, there is absolutely no need for further factual development. Whether the Department must make this adjustment to Ancientree's sales price is a legal question with no required weighing of additional factual evidence. The issue raised by Ancientree fits this well-established exception and should be considered by the Court. Indeed, considering this issue will not undermine agency decision making, as the decision to make this adjustment is not up to agency discretion but mandated by law.

Further, a second exception to the exhaustion doctrine could also apply to this case. The "exhaustion requirement does not bar a plaintiff from raising an issue in litigation if the agency in fact had an opportunity to consider the issue at the administrative level, whether or not the agency actually availed itself of that opportunity." *Zhaoqing Tifo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328, 1355 (Ct Int'l Trade 2015); *citing to Indiana Utility Regulatory Comm'n v. FERC*, 668 F.3d at 739 (acknowledging exception to doctrine of exhaustion "when an agency has considered the argument"); *Ningbo Dafa Chemical Fiber Co. v. United States*, 580 F.3d 1247, 1259 (Fed. Cir. 2009) (sustaining Court of International Trade's ruling that plaintiff's litigation of issue was not barred by doctrine of exhaustion where Commerce had opportunity to consider plaintiff's "alternative methodology" in course of agency proceeding), aff'g, 577 F. Supp. 2d 1304, 1311 (2008) (stating court's disagreement with Government's "stance" that "Commerce lacked the opportunity to consider" issue raised by plaintiff in litigation); *Portland General Electric*, 501 F.3d at 1023-25 (explaining that failure to exhaust is excused where "[the] agency . . . had an opportunity to consider the issue[,] . . . . even if the issue was considered sua sponte by the agency"). Ancientree raised this issue in a ministerial error comment before the Department in the administrative review. The Department was aware of the issue and had the

opportunity to address the clear error just as it would address any other error considered ministerial. The error is clear; and the administrative remedy to correct it would be comparable to any other ministerial error raised by a party upon review of the final results.

For both of these exceptions and the underlying goals of the exhaustion requirement, the Court should find that requiring exhaustion is not appropriate in this case. The Court should address the pure legal merits of Ancientree's case and order the Department to make the statutorily required adjustment to Ancientree's sales value.

### C. The Department's Decision not to Make the Adjustment and Reject Ancientree's Ministerial Error Comment for Failure to Exhaust was an Abuse of Discretion and Contrary to Law.

The Courts evaluate rejection of ministerial error correction requests under an abuse of discretion standard by asking whether Commerce appropriately balanced "'the desirability of finality, on the one hand, and the public interest in reaching what, ultimately, appears to be the right result on the other.'" *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995) (quoting *Civil Aeronautics Bd. v. Delta Air Lines*, Inc., 367 U.S. 316, 321 (1961). Further, a decision is arbitrary when it "entirely failed to consider an important aspect of the problem" or treats similarly situations in dissimilar ways. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (a decision may be arbitrary when it "entirely failed to consider an important aspect of the problem."); *see also Anderson v. U.S. Sec'y of Agriculture*, 462 F. Supp. 2d 1333, 1339 (2006) ("Agencies have a responsibility to administer their statutorily accorded powers fairly and rationally, which includes not 'treat[ing] similar situations in dissimilar ways.'"). The Department's rejection of the comment treated Ancientree dissimilarly than the numerous other parties that had their export subsidy adjusted as required under the law without having to ask the Department to make the adjustment. *See supra* pages 4-5 (examples of the Department making this adjustment without the parties requesting it).

The Department's rejection of the comment also failed to consider that not correcting the error was a violation of the law to adjust for export subsidies. The Department's only reason for rejecting the comment was its new regulation that ministerial error comments should be raised in the case brief. However, by not making the adjustment, the Department violated a statute. The Department is obligated to follow the statute, but had discretion in implementing its own regulations, particularly its set deadlines. *Goodluck India Ltd. v. United States*, 670 F. Supp. 3d 1353, 1382 (Ct. Int'l Trade 2023) ("And when a regulation and statute come into conflict, the statute must prevail."); *SeAH Steel Corp. v. United States*, 34 C.I.T. 605, 633-634 (2010) ("It is well established that '[a]n administrative agency endowed with the authority to promulgate regulations is given broad discretion in the exercise of its expertise to interpret and implement those regulations.' Inherent in this authority is the ability to determine whether or not the 'normal[ situation applies in any given circumstance.") (internal citations omitted); *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-539 (1970) (The principle that the Department has discretion to "relax or modify its procedural rules" when justice so requires remains the central issue for the Department's decision to accept or reject filings.). Further, the Department's rejection of the comment because of Ancientree's failure to raise the issue in a case brief also failed to consider that the comment met well-established exceptions to the exhaustion doctrine, as discussed above.

For all of these reasons, the Department's interest in finality and having issues raised in a case brief should be outweighed by the statutory requirement to make the adjustment and calculate accurate margins. Accordingly, the Department abused its discretion in not accepting Ancientree's ministerial error comments.

## V. Conclusion and Prayer for Relief

In light of the foregoing, the Department's *Final Results* were not accordance with the law. Plaintiff respectfully requests that the Court remand this case for redetermination of the issues presented in this brief.

Respectfully submitted,

/s/ Gregory S. Menegaz

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang*
J. Kevin Horgan
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth Street, N.W. 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email: gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Date: May 29, 2024

* Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **3,423** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth Street., N.W. 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email: gmenegaz@dhlaw.com
*Counsel to Plaintiff*