UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD, | |
| *Plaintiff*, | |
| v. | |
| UNITED STATES, | Court No. 23-00262 |
| *Defendant*, | |
| and | |
| AMERICAN KITCHEN CABINET ALLIANCE, | |
| *Defendant-Intervenor*. | |

**DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S MOTION FOR
JUDGMENT ON THE AGENCY RECORD**

Luke A. Meisner
Alessandra A. Palazzolo
SCHAGRIN ASSOCIATES
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for American Kitchen Cabinet
Alliance*

Dated August 26, 2024

**Table of Contents**

STATEMENT PURSUANT TO RULE 52.6(c)(1) ................................................................ 2

    I.    Administrative Determination Under Review ........................................................ 2

    II.   Issues Presented for Review ............................................................................... 2

STATEMENT OF FACTS .............................................................................................. 2

SUMMARY OF ARGUMENT ........................................................................................ 3

ARGUMENT ................................................................................................................... 4

    I.    Standard of Review ............................................................................................ 4

    II.   Ancientree's Claim Is Barred by the Doctrine of Judicial Estoppel ................. 4

    III.  Ancientree's Ministerial Error Allegation Involved Substantive Issues that Commerce Would Have Had to Address ............................................................................... 7

    IV.  The Court Should Dismiss This Case Because Ancientree Failed to Exhaust Its Administrative Remedies ................................................................................... 9

        A.   Ancientree's Failure to Timely Raise Its Alleged Ministerial Error Was a Failure to Exhaust Its Administrative Remedies .......................................................... 9

        B.   No Exceptions to the Exhaustion Doctrine Apply in This Case ................. 11

    V.   Commerce Rejected Ancientree's Untimely Ministerial Error Allegation In Accordance With Law ....................................................................................................... 16

CONCLUSION ............................................................................................................. 18

## Table of Authorities

**Cases**

*Changzhou Trina Solar Energy Co., Ltd. v. United States*,
  975 F.3d 1318 (Fed. Cir. 2020)..............................................................................17

*Corus Staal BV v. United States*,
  502 F.3d 1370 (Fed. Cir. 2007)................................................................................9

*Dalian Meisen Woodworking Co. v. United States*,
  No. 20-00110, 2022 WL 1598896 (Ct. Int'l Trade May 12, 2022) ....................3, 13

*Dalian Meisen Woodworking Co. v. United States*,
  No. 20-00110, 2023 WL 3222683 (Ct. Int'l Trade April 20, 2023) ....................3, 13

*Dalian Meisen Woodworking Co. v. United States*,
  No. 20-00110, 2024 WL 3580510 (Ct. Int'l Trade July 22, 2024)..................... passim

*Davis v. Wakelee*,
  156 U.S. 680 (1895)..................................................................................................5

*Dorbest Ltd. v. United States*,
  604 F.3d 1363 (Fed. Cir. 2010)..........................................................10, 11, 16, 17

*Euro SME SDN BHD v. United States*,
  No. 22-108, 2024 WL 550334 (Ct. Int'l Trade Feb. 12, 2024) ...........................7, 8

*Fischer S.A. Comercio, Industria & Agricultura v. United States*,
  36 C.I.T. 1604 (2012) ........................................................................................7, 15

*Itochu Building Products v. United States*,
  733 F.3d 1140 (Fed. Cir. 2013)..............................................................................12

*Lampi Corp. v. Am. Power Prods., Inc.*,
  228 F.3d 1365  (Fed. Cir. 2000)................................................................................5

*Luoyang Bearing Corp. v. United States*,
  347 F. Supp. 2d 1326 (Ct. Int'l Trade 2004) .......................................................9, 14

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)..................................................................................................5

*NTSF Seafoods Joint Stock Co. v. United States*,
  No. 20-00104, 2022 WL 1375140 (Ct. Int'l Trade April 25, 2022) ............10, 16, 17

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)..................................................................................................5

*Rissetto v. Plumbers & Steamfitters Local 343*,
    94 F.3d 597 (9th Cir. 1996) .................................................................... 5

*SeAH Steel Corp. v. United States*,
    764 F. Supp. 2d 1322 (Ct. Int'l Trade 2011) ........................................ 9

*Stanley Works (Langfang) Fastening Systems Co., Ltd. v. United States*,
    964 F. Supp. 2d 1311 (Ct. Int'l Trade 2013) ........................ 10, 14, 16, 17

*Ta Chen Stainless Steel Pipe, Ltd. v. United States,*
    28 C.I.T. 627, 342 F.Supp.2d 1191 (2004) .......................................... 7

*Trs. in Bankr. of N. Am. Rubber Thread Co., Inc. v. United States*,
    593 F.3d 1346 (Fed. Cir. 2010).............................................................. 5

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
    716 F.3d 1370 (Fed. Cir. 2013).............................................................. 9

*Zhaoqing Tifo New Fibre Co. Ltd. v. United States*,
    60 F. Supp. 3d 1328, (Ct. Int'l Trade 2015) ........................................ 14

**Statutes**

19 U.S.C. § 1673d(e) .................................................................................. 7

19 U.S.C. § 1675(h) .................................................................................... 7

28 U.S.C. § 2637(d) .................................................................................... 9

**Regulations**

19 C.F.R. § 351.224(c)(1) ................................................................... 10, 16

19 C.F.R. § 351.224(f) ................................................................................ 7

19 C.F.R. § 351.309(c)(2) ............................................................... 10, 11, 17

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD, | |
| *Plaintiff*, | |
| v. | |
| UNITED STATES, | Court No. 23-00262 |
| *Defendant*, | |
| and | |
| AMERICAN KITCHEN CABINET ALLIANCE, | |
| *Defendant-Intervenor.* | |

## DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of this Court, Defendant-Intervenor American Kitchen Cabinet Alliance ("Defendant-Intervenor") hereby submits its response to the motions for judgment on the agency record filed by Plaintiff Ancientree Cabinet Co., Ltd. ("Plaintiff" or "Ancientree"). *Plaintiff's Rule 56.2 Memorandum in Support of Motion for Judgment on the Agency Record* (ECF No. 28-2) ("Pl.'s Br."). In this response, Defendant-Intervenor has endeavored to avoid unnecessarily repeating arguments that have been made in Defendant's response brief. *See Defendant's Opposition to Plaintiff's Motion for Judgement Upon the Agency Record* (ECF No. 29) ("Def.'s Br."). Defendant-Intervenor supports the arguments made by Defendant and agrees that the Plaintiff's arguments are without merit. This Court should sustain Commerce's rejection of Plaintiff's untimely ministerial error comment for the reasons set out by Defendant, and for the additional reasons set out below.

## STATEMENT PURSUANT TO RULE 52.6(c)(1)

### I.    Administrative Determination Under Review

The administrative determination challenged by Plaintiff here is the final results from the Department of Commerce ("Commerce") in its 2021-2022 administrative review of the antidumping ("AD") order on wooden cabinets and vanities from the People's Republic of China ("China"). *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Results and Final Determination of No Shipments of the Antidumping Duty Administrative Review; 2021–2022,* 88 Fed. Reg. 76,729 (Dep't Commerce Nov. 7, 2023) ("*Final Results*"), P.D. 336, and accompanying Issues and Decision Memorandum ("IDM"), P.D. 321.

### II.    Issues Presented for Review

1) Whether the doctrine of judicial estoppel bars Plaintiff's claims in this case.

2) Whether Plaintiff's failure to exhaust its administrative remedies regarding the alleged "ministerial error" precludes it from raising its arguments before this Court.

3) Whether Commerce properly rejected Plaintiff's untimely ministerial error allegation and declined to make adjustments to the U.S. sales price as requested in that rejected submission.

## STATEMENT OF FACTS

Defendant-Intervenor agrees with the statement of facts set forth in Defendant's response brief and hereby supplements that statement with additional facts relevant to Ancientree's claims in this action.

As detailed in Defendant's response brief, Ancientree submitted a ministerial error allegation on November 13, 2023, in which it claimed for the first time that Commerce's export price calculations did not include an export subsidy adjustment that is authorized by 19 U.S.C. § 1677a(c)(1)(c). *See* Rejection of Untimely Ministerial Error Allegation (Dep't of Commerce

Nov. 20, 2023), P.R. 338. Ancientree alleged that Commerce should adjust Ancientree's export price by the **full** 10.54% Export Buyers Credit ("EBC") program that Commerce countervailed in the original countervailing duty investigation of wooden cabinets and vanities and components thereof from China. *See* Pl.'s Br. at 6. Significantly, at the same time that Ancientree was making this allegation, it was also arguing before this Court that Commerce must find that the EBC subsidy was not used at all or, alternatively, must make a *pro rata* adjustment that would significantly reduce the subsidy rate of 10.54%. *See Dalian Meisen Woodworking Co. v. United States*, No. 20-00110, 2024 WL 3580510 (Ct. Int'l Trade July 22, 2024) ("*Dalian III*"); *Dalian Meisen Woodworking Co. v. United States*, No. 20-00110, 2023 WL 3222683 (Ct. Int'l Trade April 20, 2023) ("*Dalian II*"); *Dalian Meisen Woodworking Co. v. United States*, No. 20-00110, 2022 WL 1598896 (Ct. Int'l Trade May 12, 2022) ("*Dalian I*"). Ancientree prevailed in making this argument. In particular, in its third opinion in the case, the Court has remanded the original countervailing duty investigation for a third time with clear instructions that, for each of Ancientree's U.S. customers whose non-use of the EBC program was verified, Commerce must determine a customer-specific rate that excludes a subsidy amount for the program and recalculate Ancientree's final subsidy rate. *Dalian III*, 2024 WL 3580510 at * 1. This will result in Commerce significantly reducing the 10.54% subsidy rate for the EBC program.

## SUMMARY OF ARGUMENT

Ancientree's claim in this case should be barred by the doctrine of judicial estoppel. Ancientree's claim that its export price should be adjusted by the full 10.54% subsidy rate for the EBC program is clearly inconsistent with its earlier position in the *Dalian* case. Moreover, Ancientree has succeeded in persuading the Court to accept its earlier position, so that judicial acceptance of its inconsistent position in this later proceeding would create the perception that

3

either the first or the second court was misled on this issue. Ancientree would derive an unfair advantage if it is not estopped.

In addition, Ancientree failed to exhaust its administrative remedies before Commerce at the agency level because it did not raise its ministerial error allegation according to the procedure outlined in Commerce's regulations. Moreover, no exceptions to the exhaustion requirement apply in this case. Ancientree's claim is not a question of pure law but rather raises substantive issues that would require further agency deliberation, and as Ancientree did not raise its allegation until after Commerce issued its final results, Commerce did not have a chance to consider these issues.

Finally, Commerce properly rejected Ancientree's ministerial error allegation because it was not submitted in a timely manner. This is consistent with Commerce's regulations, practice, and decisions from this Court and the Court of Appeals for the Federal Circuit ("Federal Circuit") affirming Commerce's discretion to set and enforce deadlines for alleging ministerial errors. Additionally, Ancientree's allegation is not even really a ministerial error, since Ancientree's allegation raises substantive and methodological issues rather than identifying a clerical or mathematical error in Commerce's calculations. For this reason, too, it was properly rejected.

## ARGUMENT

### I.    Standard of Review

Defendant-Intervenor agrees with the standard of review provided in Defendant's response brief and incorporates this standard by reference. *See* Def.'s Br. at 4-5.

### II.    Ancientree's Claim Is Barred by the Doctrine of Judicial Estoppel

Ancientree claims before this Court that Commerce should have adjusted its export price

by the ***full*** 10.54% subsidy rate for the EBC program that Commerce countervailed in the original countervailing duty investigation. *See* Pl.'s Br. at 6. This claim should be barred by the doctrine of judicial estoppel.

The judicial estoppel doctrine has been set forth by the United States Supreme Court as follows: "'{w}here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). In other words, the rule of "{j}udicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) (citing *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 605 (9th Cir. 1996)).

The Court's judicial estoppel analysis is guided by three factors which should "typically inform the decision whether to apply the doctrine in a particular case": (1) whether the "party's later position {is} clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 743, 750–51 (citations omitted) (internal quotation marks omitted). Further, "{j}udicial estoppel applies just as much when one of the tribunals is an administrative agency as it does when both tribunals are courts." *Trs. in Bankr. of N. Am. Rubber*

5

*Thread Co., Inc. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010) (citing *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377 (Fed. Cir. 2000) ("The {judicial estoppel} doctrine also applies to administrative proceedings in which a party obtains a favorable order by making an argument that it seeks to repudiate in a subsequent judicial proceeding")).

Here, all three factors warrant the application of judicial estoppel to bar Ancientree's claims in this case. First, Ancientree's position in this case is clearly inconsistent with Ancientree's earlier position in the *Dalian* case. In this case, Ancientree claims that Commerce should adjust its export price by the full 10.54% subsidy rate for the EBC program from which it was found to have benefitted in the countervailing duty investigation. In the earlier *Dalian* case, Ancientree argued that Commerce must find that its customers did not use the EBC program at all or, alternatively, that Commerce must reduce the 10.54% subsidy rate to account for the customer certifications of non-use that Ancientree provided. *See generally Dalian III*, 2024 WL 3580510. Second, Ancientree has succeeded in persuading the Court in the *Dalian* case to order Commerce to reduce its 10.54% subsidy rate based on the customer certifications of non-use. *See id.* If this Court now ordered Commerce to adjust Ancientree's export price by the full 10.54% subsidy rate, it would create the perception that it was misled regarding the appropriate amount of the relevant adjustment. Third, Ancientree would derive an unfair advantage from advancing two inconsistent positions. After prevailing in the *Dalian* case, Ancientree's exports of merchandise will no longer be subject to the 10.54% subsidy rate for the EBC program. At the same time, Ancientree seeks to benefit from a 10.54% adjustment to its export price based on its customers' participation in the EBC program.

In sum, to prevent Ancientree from gaining an unfair advantage by taking inconsistent positions before this Court and Commerce, the Court should hold that Ancientree's claim in this

case is barred by the doctrine of judicial estoppel.

### III. Ancientree's Ministerial Error Allegation Involved Substantive Issues that Commerce Would Have Had to Address

As discussed in Defendant's brief and in the sections below, Commerce properly rejected Ancientree's allegation because it was untimely filed. As a threshold matter, however, it is important to emphasize that Ancientree's allegation involved more than simply a "ministerial error" but instead raised difficult substantive and methodological issues for Commerce to address.

The antidumping statute requires Commerce to "establish procedures for the correction of ministerial errors ... {which} shall ensure opportunity for interested parties to present their views regarding any such errors." 19 U.S.C. § 1675(h). The statute defines a ministerial error as "an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error." *Id.*; *see also* 19 C.F.R. § 351.224(f). On the other hand, as this Court has recognized, "{m}ethodological choices are not unintentional errors and therefore cannot be raised using the ministerial error process." *Euro SME SDN BHD v. United States*, No. 22-108, 2024 WL 550334, at \*12 (Ct. Int'l Trade Feb. 12, 2024). Put another way, "the ministerial error procedure is not the appropriate method for a party to raise a new, substantive legal argument." *Fischer S.A. Comercio, Industria & Agricultura v. United States*, 36 C.I.T. 1604, 1613 (2012) (citing 19 U.S.C. § 1673d(e); *Ta Chen Stainless Steel Pipe, Ltd. v. United States,* 28 C.I.T. 627, 644, 342 F.Supp.2d 1191, 1205 (2004).

Here, it is not clear at all– as Ancientree appears to take for granted – that Commerce would have fixed the alleged ministerial error even if it been timely raised in Ancientree's administrative case brief as required by statute. As a recent opinion from this Court explained,

7

"the Federal Circuit has held that the inclusion or exclusion of certain figures in a calculation that are not 'an arithmetic or clerical error or an inadvertent mistake … do { } not fall within the statutory definition of a 'ministerial error.'" *Euro SME*, 2024 WL 550334 at *13 (citing *QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1328 (Fed. Cir. 2011)). In this case, the error Ancientree alleged was that Commerce did not adjust its calculation of Ancientree's U.S. sales price to account for a "10.54% subsidy." Pl.'s Br. at 6. Ancientree's complaint is therefore literally based on the "inclusion or exclusion of certain figures in a calculation." *Euro SME*, 2024 WL 550334 at *13.

Indeed, Ancientree's belatedly filed allegation that Commerce should have adjusted its export price by the 10.54% subsidy rate for EBC program raised multiple methodological and substantive issues. These issues include but are not limited to: (i) whether it would be appropriate to adjust the export price at all, given that Ancientree was claiming in another proceeding that none of its customers used the EBC program; (ii) if any adjustment was made, whether the adjustment should be the full amount of 10.54% or the *pro rata* amount proposed by Ancientree; and (iii) if any adjustment was made, whether it must be on a customer-specific basis as ordered by the Court in *Dalian III*. Resolving these questions does not involve fixing a simple arithmetic error or clerical mistake. Their resolution requires Commerce to make difficult substantive and methodological questions. Thus, Ancientree's allegation does not involve a "ministerial error" and should be rejected on this basis alone. *See, e.g.*, *QVD Food Co.*, 658 F.3d at 1328 (holding that even if the respondent had not forfeited its claim through the untimely filing of a ministerial error allegation, the claim was still properly rejected because the alleged error was not ministerial).

In its brief, Ancientree mischaracterizes Commerce's letter rejecting Ancientree's

untimely submission by arguing that since Commerce "{did} not deny that it was required to make this adjustment and did not deny that the allegation qualifies as a ministerial error" in its letter, Commerce's silence should be taken as agreement for Ancientree's stance on these issues. Pl. Br.'s at 6. As the Defendant notes, "Commerce did not reach the issue because it found Ancientree's allegation to be untimely." Def.'s Br. at 7, fn. 2. Had Commerce actually reached the issue, the discussion above makes clear that the allegation does not qualify as a ministerial error.

**IV.    The Court Should Dismiss This Case Because Ancientree Failed to Exhaust Its Administrative Remedies**

As demonstrated below, even assuming that Ancientree's allegation actually involved a "ministerial error," its claims before this Court must still be rejected because Ancientree failed to exhaust its administrative remedies during the underlying review.

**A.  Ancientree's Failure to Timely Raise Its Alleged Ministerial Error Was a Failure to Exhaust Its Administrative Remedies**

"{T}he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). As the Federal Circuit has explained, this Court "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies." *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1381 (Fed. Cir. 2013) (*citing Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007); *SeAH Steel Corp. v. United States*, 764 F. Supp. 2d 1322, 1325 (Ct. Int'l Trade 2011)).

As Ancientree acknowledges in its brief, "ensur{ing} that parties do not contravene established administrative processes" is one of the "primary purposes of the exhaustion doctrine." Pl.'s Br. at 7 (citing to *Luoyang Bearing Corp. v. United States*, 347 F. Supp. 2d 1326, 1352 (Ct. Int'l Trade 2004)). In this case, the established administrative process for alleging

ministerial errors during an investigation or review is codified at 19 C.F.R. § 351.224(c). As Defendant explains in its brief, this regulation states that "{c}omments concerning ministerial errors made in the preliminary results of a review should be included in a party's case brief." Def. Br. at 6 (citing 19 C.F.R. § 351.224(c)(1)). Additionally, as codified at 19 C.F.R. § 351.309(c)(2), "{t}he case brief must present all arguments that continue in the submitter's view to be relevant to {Commerce's} final determination or final results." 19 C.F.R. § 351.309(c)(2). These are mandatory regulations. *See NTSF Seafoods Joint Stock Co. v. United States*, No. 20-00104, 2022 WL 1375140 (Ct. Int'l Trade April 25, 2022) at *9-10 (stating that, contrary to plaintiff's argument that "raising the error in its case brief was optional," instead "{t}he Federal Circuit … treats the regulations as mandatory").

Ancientree ignored this established administrative process entirely when it did not make any mention of the alleged error in its case brief, although the alleged error was easily identifiable at the time of Commerce's preliminary results for the 2021-2022 review. *See Ancientree's Case Brief* (July 10, 2023), P.R. 295; Letter from Commerce, *Rejection of Untimely Ministerial Error Allegation* (Nov. 20, 2023), P.R. 338. The fact that Ancientree now seeks to litigate the argument that it failed to make according to established administrative procedure is precisely the type of situation the exhaustion doctrine was designed to prevent.

This Court and the Federal Circuit have repeatedly held that a failure to raise ministerial errors according to Commerce's requirements constitutes a failure to exhaust administrative remedies. *See, e.g., Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010); *Stanley Works (Langfang) Fastening Systems Co., Ltd. v. United States*, 964 F. Supp. 2d 1311, 1341-42 (Ct. Int'l Trade 2013) (holding that the plaintiff's "failure to raise any ministerial allegations at the time Commerce's calculations were disclosed, or even in its administrative case brief, is fatal

to the claim that it seeks to press here" because it failed to exhaust its administrative remedies).

In *Dorbest*, a respondent alleged a ministerial error as "a footnote in its rebuttal brief before

Commerce and again during the ministerial comment period before Commerce's adoption of its

original final determination," but *not* in its case brief as required by 19 C.F.R. § 351.309(c)(2).

*Dorbest*, 604 F.3d at 1375. This Court determined that it could not review that issue because the

respondent had failed to exhaust its administrative remedies. *Id.* On appeal, the Federal Circuit

affirmed that "the CIT did not err by refusing to consider" that issue, noting that "parties are

'procedurally required to raise the{ir} issue before Commerce at the time Commerce {is}

addressing the issue.'" *Id.* (citing *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375,

1383 (Fed. Cir. 2008)).

In this case, Ancientree made even less of an effort to follow established procedure than

the respondent in *Dorbest*, who at least attempted to raise the issue prior to Commerce's final

results by including the ministerial error as a footnote in its rebuttal brief. Instead, Ancientree

waited until the briefing process was over and Commerce had already issued its final results

before raising its issue in an untimely filed ministerial error. Here, as in *Dorbest*, the Court

should find that Ancientree has failed to exhaust its administrative remedies on this issue.

### B. No Exceptions to the Exhaustion Doctrine Apply in This Case

Ancientree argues that this Court should consider two exceptions to the exhaustion

doctrine: first, that the issue is "a clear matter of pure law" not requiring further factual

development, and second, that "the agency in fact had an opportunity to consider the issue at the

administrative level." Pl.'s Br. at 8-9 (citations omitted). However, as Defendant establishes,

neither of these provide grounds on which this Court should exercise its discretion and waive

Ancientree's failure to exhaust its administrative remedies. *See* Def.'s Br. at 12-15.

1.  <u>The Issue Is a Question of Agency Discretion Rather than "Pure Law"</u>

First, the Federal Circuit has indicated that an exception to the exhaustion doctrine may be appropriate "where the issue for the court is a 'pure question of law' that can be addressed without further factual development or further agency exercise of discretion." *Itochu Building Products v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013). Here, Ancientree argues that the question of whether Commerce erred by not adjusting its calculation as requested in Ancientree's untimely ministerial error comment is a "matter of pure law." Pl.'s Br. at 8. However, as Defendant explaines in its brief, "{a}ny resolution of Ancientree's argument would necessarily require Commerce's involvement and consideration of the parallel countervailing duty proceeding," making it a "mixed question of law and fact." Def.'s Br. at 14. Indeed, because the parallel countervailing duty proceeding involves multiple court opinions and remand redeterminations relevant to the subsidy rate for the EBC program, there are multiple complex factual and methodological issues for Commerce to consider. *See Dalian III*, 2024 WL 3580510 at *1. The fact that the substantive issues presented by Ancientree's ministerial error comments were not fully developed at the agency level is the direct result of Ancientree's failure to exhaust its administrative remedies. As Defendant explains, the "fact" that Ancientree alleges as the basis of its ministerial error comment was never properly raised on the record of the underlying proceeding. *See* Def.'s Br. at 13-14.

If Ancientree had raised its alleged ministerial error in a timely and correct manner during the administrative review, Defendant-Intervenor would have had the chance to raise, and Commerce the chance to consider, substantive administrative issues regarding Ancientree's allegations. For example, Defendant-Intervenor could have brought to Commerce's attention Ancientree's inconsistency in alleging that the U.S. price must be adjusted by 10.54% to account

for the EBC program at the same time as it challenged Commerce's original findings on that program before this Court. *See Dalian II*, 2023 WL 3222683 at *1; *Dalian I*, 2022 WL 1598896 at *1. Defendant-Intervenor could also have argued that, if any adjustment to export price were to be made based on the EBC program, it would have to be a *pro rata* amount and not the full amount requested by Ancientree.

Ancientree should have known to raise its claims in a timely manner, especially given that it sought to have the U.S. price adjusted by the full amount of 10.54% after it had argued that it should be subject to a much lower rate for the same program. *Dalian II*, 2023 WL 3222683 at *4. As mentioned, Ancientree was ultimately successful in this argument, convincing this Court to remand the determination of Ancientree's subsidy rate to Commerce with instructions to determine a customer-specific rate excluding the EBC program "for each of Ancientree's U.S. customers whose non-use of {the EBC program} was verified." *Dalian III*, 2024 WL 3580510 at *1 (Ct. Int'l Trade July 22, 2024). The statutory text unambiguously states that the purpose of the adjustment to export price is to "offset" the export subsidy. *See* 19 U.S.C. §1677a(c)(1)(c). It would be unfair, and contrary to the statute, for Ancientree to receive the benefit of a 10.54% adjustment to U.S. price in Commerce's calculation of the dumping margin for the 2021-2022 administrative review if the final amount of the countervailing duty imposed for the EBC program subsidy is less than 10.54%.

2.   <u>Commerce Did Not Have an Opportunity to Consider the Issue at an Administrative Level</u>

Second, in past cases where the Court has granted an exception to the exhaustion doctrine on the grounds that Commerce "had an opportunity to consider the issue at the administrative level, whether or not the agency actually availed itself of that opportunity," the Court has done so in circumstances where "Commerce … had an opportunity to consider the issue in the Final

Results." *Zhaoqing Tifo New Fibre Co. Ltd. v. United States*, 60 F. Supp. 3d 1328, 1358 (Ct. Int'l Trade 2015); *see also Luoyang Bearing Corp.* , 347 F. Supp. 2d at 1353 (noting that Commerce acknowledged the responding parties' argument in its Issues and Decision Memorandum, which necessarily means that those arguments were raised prior to the Final Results).

Here, Ancientree did not raise the issue until *after* Commerce issued its Final Results and accompanying IDM in this review. *See Final Results*, 88 Fed. Reg. 76,729 (Dep't Commerce Nov. 7, 2023), P.R. 320, and accompanying IDM, P.R. 321; *compare to* Letter from Commerce, *Rejection of Untimely Ministerial Error Allegation* (Nov. 20, 2023), P.R. 338 (noting that Ancientree's untimely ministerial error allegation was submitted on November 13, 2023). As discussed above, Ancientree ignored the codified procedure for raising ministerial error allegations identifiable in the preliminary results by failing to raise these allegations in its case brief. Commerce therefore properly rejected the submission as untimely and removed it from the record. *See* Letter from Commerce, *Rejection of Untimely Ministerial Error Allegation* (Nov. 20, 2023), P.R. 338.

Even if an allegation made in a submission that Commerce properly rejected as untimely could be considered sufficient notice of the issue to allow for an exception to the exhaustion requirement, the timing of Ancientree's submission effectively precluded Commerce from considering the allegation during the review. In addition to the cases discussed by Defendant in its brief, in another case, *Stanley Works*, the Court found that the respondent failed to exhaust its administrative remedies when it did not raise its ministerial error allegation on an issue present in the preliminary results until after the final results were published. *See Stanley Works*, 964 F. Supp. 2d at 1341-42. The Court noted that "{t}hus, Staney did not raise the challenge 'until after

the proceeding had essentially concluded.'" *Id.* at 1342. Similarly, here, due to Ancientree's own failure to follow procedure during the review, the alleged ministerial error was not brought to Commerce's attention until after the Final Results, when the proceeding had essentially concluded. Therefore, as in *Stanley Works*, Commerce should find that Ancientree "failed to exhaust its administrative remedies and is thus barred from pursuing its claim of ministerial error in this forum." *See id.*

      3.   <u>The Court Should Reject Ancientree's Attempt to Use the Ministerial Error Procedure to Avoid the Exhaustion Requirement</u>

As discussed above, Ancientree's allegation that Commerce was required to make an adjustment to export price based on the EBC program was not a "ministerial error" because it involved substantive and methodological choices. This Court has repeatedly rejected parties' attempts to avoid the exhaustion requirement by raising substantive claims in the guise of ministerial error allegations. For example, in *Fischer*, the plaintiffs filed a ministerial error allegation that Commerce had erred in using certain home market sales outside the period of review to calculate its constructed value profit ratio. *Fischer*, 36 C.I.T. at 1611. After agreeing with Commerce that this was a substantive issue and not a ministerial error, the Court explained that it would "not allow {p}laintiffs to make an end run around the exhaustion requirement by entertaining an unexhausted substantive issue disguised as a ministerial error." *Id.* at 1613. Allowing this type of argument "would enable a party to preserve a substantive legal challenge to Commerce's determination using the protection of the ministerial error process, thus depriving Commerce of its opportunity to defend its decision at the proper time." *Id.* The same concerns are present here. Allowing Ancientree to advance substantive legal arguments that should have been presented in its case brief but were improperly raised instead in the form a ministerial error allegation "would allow the ministerial error exception swallow the administrative exhaustion

requirement." *Id.* at 1612. For this reason, as well, the Court should apply the exhaustion

doctrine to dismiss Ancientree's claims.

## V.    Commerce Rejected Ancientree's Untimely Ministerial Error Allegation In Accordance With Law

Assuming again that Ancientree's allegation actually involved a true "ministerial error"

rather than substantive legal arguments, Commerce properly rejected the allegation as untimely.

This Court and the Federal Circuit have consistently held that Commerce has discretion to set

and enforce deadlines for alleging ministerial errors, and specifically, that Commerce is not

required to correct ministerial errors that were discoverable prior to those deadlines but untimely

raised. *See, e.g., QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1328 (Fed. Cir. 2011)

("Commerce's refusal to make a ministerial correction is not reversible error when the alleged

mistake was discoverable during earlier proceedings but was not pointed out to Commerce

during the time period specified by regulation"); *Dorbest*, 604 F.3d at 1376-77; *Stanley Works*,

964 F. Supp. 2d at 1341; *NTSF Seafoods Joint Stock Co. v. United States*, No. 20-00104, 2022

WL 1375140 (Ct. Int'l Trade April 25, 2022) (where Commerce rejected an untimely ministerial

error comment, "it was not an abuse of discretion for the Department to reject a party's attempt

to change course only after the final determination was not to its liking"). As discussed above,

and by Defendant, Ancientree had the opportunity to identify the alleged ministerial error at the

time Commerce issued its Preliminary Results and to include its ministerial error comments in its

administrative case brief so that Commerce could consider the allegation for its final results. *See*

19 C.F.R. § 351.224(c)(1)-(2); *see also* Def.'s Br. at 6-7. Ancientree did not take this

opportunity. Instead, Ancientree attempted to file its untimely ministerial error comments six

days after Commerce published its Final Results. Therefore, Commerce acted consistently with

its regulations, practice, and Federal Circuit precedent in rejecting Ancientree's untimely

16

submission.

Ancientree argues that *Changzhou Trina Solar Energy Co.* requires Commerce to adjust Ancientree's export price to account for the EBC program despite Ancientree's failure to raise its alleged ministerial error in the post-preliminary case brief. *See* Pl.'s Br. at 5-6 (citing *Changzhou Trina Solar Energy Co., Ltd. v. United States*, 975 F.3d 1318 (Fed. Cir. 2020)). In *Changzhou*, the Federal Circuit rejected Commerce's finding that the EBC program was not an "export subsidy" and held that Commerce was required to increase a respondent's export price by the full amount of the EBC program. However, there is a significant difference between the facts of this case and those underlying *Changzhou*. In *Changzhou*, Commerce addressed the question of "whether to offset {the respondent's} export price by any countervailed export subsidy" in the final results of that review. *Changzhou*, 975 F.3d at 1324. Necessarily, therefore, the respondent in that case had properly raised its issues with Commerce's methodology in its case brief such that Commerce was able to consider and address the comments in its final results. *See* 19 C.F.R. § 351.309(c)(2). Here, in contrast, Ancientree failed to raise its argument regarding the EBC program in its case brief.

Nothing in the Court's opinion in *Changzhou* addresses whether Commerce is obliged to act upon untimely ministerial error allegations, in contrast to Commerce's regulations and practice, simply because of the specific allegation made. *See generally Changzhou*, 975 F.3d at 1326-1333. Instead, numerous opinions from this Court and the Federal Circuit have made it clear that Commerce is not required to act upon untimely ministerial error allegations. *See, e.g., QVD Food Co., Ltd.*, 658 F.3d at 1328; *Dorbest*, 604 F.3d at 1376-77; *Stanley Works*, 964 F. Supp. 2d at 1341; *NTSF Seafoods Joint Stock Co.*, 2022 WL 1375140 at *10.

The facts in *Changzhou* are also distinguishable from the facts in this case on other

17

grounds. In particular, unlike in *Changzhou*, developments in the parallel countervailing duty proceeding on wooden cabinets and vanities from China call into question whether any adjustment to export price based on the EBC program is warranted and, even if it is warranted, what the proper amount of the adjustment should be. There were no such developments at issue in *Changzhou* that were before the agency or the courts. The only issue for Commerce and the courts to resolve was whether the EBC program was an "export subsidy" such that the respondent's export price had to be adjusted according to the statute.

The bottom line is that Commerce acted properly when it rejected Ancientree's ministerial error allegation as untimely and declined to make the adjustments that Ancientree demanded.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Ancientree's challenge in this case and uphold the challenged aspects of Commerce's final results as supported by substantial evidence and in accordance with law.

Respectfully submitted,

/s/ Luke A. Meisner
Roger B. Schagrin
Luke A. Meisner
Alessandra A. Palazzolo

**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for American Kitchen Cabinet Alliance*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response brief the word count limitations set forth in Paragraph 2(B)(1) of the Court's Standard Chambers Procedures. This response brief contains 5,269 words (including text, quotations, footnotes, headings, and attachments) according to the word count function of the word processing software used to prepare the brief

/s/ Luke A. Meisner
Luke A. Meisner