UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant. ) | Court No. 23-262 |

**PLAINTIFF'S REPLY BRIEF**

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Dated: September 25, 2024

1

**TABLE OF CONTENTS**

I.     **The Court Should Find the Exhaustion Requirement is Waived under the Circumstances** .................................................................................................................. 1

II.    **Judicial Estoppel Does Not Apply** ............................................................................... 7

III.   **Conclusion and Prayer for Relief** ................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Changzhou Trina Solar Energy Co. v. United States*, 393 F. Supp. 3d 1245 (Ct. Int'l Trade 2019) ......................................................................................................................2

*Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103-04 (1990)..........................................2

*Dalian Meisen Woodworking Co., Ltd. v. United States*, 2024 Ct. Intl. Trade LEXIS 89 ..............8

*Goodluck India Ltd. v. United States*, 670 F. Supp. 3d 1353 (Ct. Int'l Trade 2023).......................2

*Itochu Bldg. Prods. v. United States*, 733 F.3d 1140 (Fed. Cir. 2013) ............................................6

*Koyo Seiko Co. v. United States*, 186 F. Supp. 2d 1332 (Ct. Int'l Trade 2002) ..............................4

*National Knitwear & Sportswear Ass'n v. United States*, 15 C.I.T. 548 (1991)..............................2

*Pakfood Public Co. Ltd. v. United States,* 724 F. Supp. 2d 1327 (Ct. Int'l Trade 2010) ................6

**Statutes & Regulations**

19 U.S.C. §1677a(c)(1)(c) ........................................................................................................... 1-2

28 U.S.C. § 2637(d) .........................................................................................................................5

**Administrative Decisions**

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination,* 85 Fed. Reg. 11,962 (Feb. 28, 2020) ...............................................................................................................................4

Plaintiff The Ancientree Cabinet Co., Ltd., ("Ancientree" or "Plaintiff") hereby responds to the Defendant and Defendant-Intervenor response briefs.  See U.S. Br. (August 12, 2024), ECF 29; *see also* Def-Int. Br. (August 26, 2025), ECF 30.  Both the United States and Defendant-Intervenor claim that the Department was not required to make the export subsidy adjustment because Ancientree failed to exhaust its administrative remedies and include this in a case brief.  However, these arguments fail to properly contemplate the exhaustion requirement within the particular circumstances, where the adjustment was required by statute and is a question of pure law.  In addition, the issue was raised before the agency as a ministerial error.  The Department's obligation was straightforward and legally compelled.  Accordingly, the Court should find that the Department abused its discretion in not making this legally required adjustment under the circumstances.

I. **The Court Should Find the Exhaustion Requirement is not Required under the Circumstances.**

The United States and Defendant-Intervenor's response briefs essentially make the same primary argument that exhaustion of administrative remedies normally precludes the consideration of the issue Ancientree has raised in its ministerial error comment, i.e. that the Department was required to increase the U.S. sales price by the amount of the exporter buyer's credit export subsidy program.  These arguments fail to consider the unique circumstances and weight of the fact that the requested adjustment is required by statute and improperly try to suggest that the adjustment is not a matter of pure law.  The Department did not have the discretion to disregard its statutory obligation at issue in this case.

First, Ancientree reiterates as it did in its opening brief that the adjustment for export subsidies is specifically required by law.  19 U.S.C. §1677a(c)(1)(c) directs the Department that "the price used to establish export price and constructed export price shall be increased by ... the

1

amount of any countervailing duty imposed on the subject merchandise under part I of this subtitle to offset an export subsidy." The use of "shall" denotes a necessary requirement under the law. The fact that this is a necessary adjustment for any export subsidy under the law has never been disputed by the Department. The Courts have also found this is a necessary adjustment under the law. *Changzhou Trina Solar Energy Co. v. United States*, 393 F. Supp. 3d 1245, 1249-1250 (Ct. Int'l Trade 2019) ("Given that 19 U.S.C. § 1677a(c)(1)(C) uses the mandatory 'shall' to direct Commerce's actions as to offsets when Commerce imposes a countervailing duty and here Commerce imposed such a duty, the increase to Trina's U.S. selling prices by the amount countervailed to offset the export subsidy is in accordance with law."); *see also* Ancientree R56.2 Br. at 4-5 (discussing Department practice and Court precedent on this required adjustment). This law prevents double-counting of trade remedies, which is *per se* unreasonable for a civil non-penal statute but in this case is also codified by law. *National Knitwear & Sportswear Ass'n v. United States*, 15 C.I.T. 548, 558 (dumping duties are remedial, not penal, in nature.) *citing Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103-04 (1990). Further, although it is a regulation that ministerial error comments should be raised in the case brief but it is a statute that mandates this adjustment. *Goodluck India Ltd. v. United States*, 670 F. Supp. 3d 1353, 1382 (Ct. Int'l Trade 2023) ("And when a regulation and statute come into conflict, the statute must prevail.").

  The cases cited by the United States and Defendant-Intervenor that exhaustion is a strict requirement, and that even ministerial errors that should have been raised in the case brief are untimely, do not apply to the fact pattern before the Court. U.S. Br at 6-7; Def-Int. Br. at 10-11. For example, *QVD Food*, while similarly involving a ministerial error that could have been raised in case brief, dealt with the calculation of surrogate financial ratios. Very similarly,

*Dorbest* also involved the attempt to raise a surrogate financial ratio calculation as a ministerial error. The calculation of financial ratios and categorization of various expenses is a methodological decision and involves fact finding of how the company categorizes such line items. Thus both of these cases are *dissimilar* to the matter of pure law raised here. *Timken* is distinguishable in that it involved a request to correct errors that the respondent itself had made in its own sales data. *Stanley Works* involved a ministerial error on the weight basis for calculating the normal value, but the Department stated this was not an error because the decision was intentional. Notably, the Department avoids specifically stating that its final results were intentional in this case. It would have been simple for the Department to cite cases where it intentionally double counted AD and CVD remedies if that were its practice (contrary to law) but the Department could not offer an example of such practice for the evident reason that it is not its practice and the decision in this case was not intentional, unlike *Stanley Work*s and the other cases cited by Defendant. In *Mittal Steel*, the Plaintiff failed to file remand comments at the agency on the date to be used for calculating credit expenses. These cases all did involve both necessary factual finding and methodological decisions. This case at hand is starkly distinguished from the cases cited by Defendant and Defendant-Intervenor in that no further fact-finding is required and the law compels the outcome.

      Second, the argument that this issue is "methodological" or not an issue of pure law must be rejected. The United States claims that this export subsidy offset is "methodological" and not ministerial. U.S. Br. at 7. The United States goes on to explain that it is not a matter of pure law because it required "consideration" of the countervailing record. *Id*. at 14. This completely misstates the facts or understanding of a question of pure law. There are no disputed facts or methodological questions. The "consideration" of the countervailing record is only the stated

undisputed fact that the Department applied an export subsidy, the EBC program, to Ancientree in the amount of 10.54%. The fact that the EBC program is an export subsidy is not disputed. *See* Ancientree R.56.2 Br. at 4-5 (citing numerous examples of the Department finding the program is an export subsidy and making the adjustment as due course). Indeed, in the third review, the Department made this offset adjustment in the antidumping review without any discussion of it in the decision memorandum.

The fact that this EBC program was applied to Ancientree and remained in effect during the POR is also not disputed. *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination,* 85 Fed. Reg. 11,962 (Feb. 28, 2020), and accompanying IDM at 77 (listing the EBC program among the <u>export</u> subsidies applied to Ancientree). The Department's adjustment is also not different from review to review: there is one calculation adjustment that the Department makes when there are export subsidies; not just for this Order but in all cases where there are companion CVD measures in effect that involve export subsidy findings by the Department. This is not something that parties normally argue because it is so clearly compelled by law. Accordingly, there is nothing to consider other than *undisputed* facts. *Koyo Seiko Co. v. United States*, 186 F. Supp. 2d 1332, 1338 (Ct. Int'l Trade 2002) (exhaustion is not required when "the question is one of law and does not require further factual development and, therefore, the court does not invade the province of the agency by considering the question"). The United States also claims that the regulation on exhaustion does not differentiate between the types of error, i.e. if it was a pure legal question or not. U.S. Br. at 9. But of course, the discretionary exhaustion doctrine has well established exceptions, including pure law, so this argument also misses the point.

As elaborated further below under judicial estoppel, the Defendant-Intervenor also makes the argument that this is not a question of pure law because of the *Dalian* litigation. Def-Int Br. at 13. The decision discussed came out only on July 22, 2024. To the extent that Defendant-Intervenor also references the earlier 2023 opinion in the *Dalian* litigation, that opinion absolutely did not entail that the Department would remove the EBC rate from the countervailing margin. Indeed, in that first remand, the Department made no adjustment and the 10.54 EBC rate remained in effect. Thus, Defendant-Intervenor is absolutely incorrect that if Ancientree had raised the export subsidy adjustment in its case brief, that there would have been an opportunity for the Department to have considered that litigation's impact on the outcome because there was no impact at the time. Notably, the United States does not take the position that such litigation renders this case moot or that it impacts the question of pure law. During this second review and when briefs were due in this review, Ancientree's imports were subject to the 10.54%. The fact that an issue was appealed does not render the underling administrative decision non-final during the litigation. It stands as the law until overturned, and even currently with the most recent decision that came out a year after the briefing in this review, the Department has still not been ordered to remove the EBC program completely with respect to all of Ancientree's exports through the second review. Thus, this *Dalian* litigation did not impact Defendant-Intervenor's or the Department's ability during the underlying review to have addressed *Dalian* in the context of the adjustment because *Dalian* was not and is not yet a relevant final decision.

Indeed, the purpose behind exhaustion is not fulfilled here. As discussed by both the United States and Defendant-Intervenor, 28 U.S.C. § 2637(d) does indicate a Congressional intent that, absent a strong contrary reason, parties should exhaust their remedies[1] before the

---

[1] As explained more fully in its opening brief, Ancientree submits that in some respect it did

administrative agency. However, Congress specifically chose to make it discretionary, recognizing the need to analyze the purpose of the exhaustion doctrine and the facts of each case. Where requiring exhaustion would not serve any useful purpose, the Court has not hesitated from exercising its discretion to waive the requirement by applying various exceptions. *See Pakfood Public Co. Ltd. v. United States,* 724 F. Supp. 2d 1327, 1350-51 (Ct. Int'l Trade 2010) ("{A} party's failure to exhaust its administrative remedies should not preclude judicial review of its claims where the benefits of exhaustion are inapplicable or outweighed by other concerns."). Ancientree has raised an issue of pure law, an adjustment required under the law with undisputed facts. Correction of this error would not forego the Department's ability to have developed necessary facts for the record or opportunity to exercise its administrative expertise that would have occurred if raised during the administrative review. It is a simple adjustment that the Department makes a matter of course in each review, without discussion or "methodological consideration". *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013) ("The requirement that invocation of exhaustion be "appropriate," however, requires that it serve some practical purpose when applied. Inquiry into the purposes served by requiring exhaustion in the particular case, and any harms caused by requiring such exhaustion, is needed to determine appropriateness.").

  Ancientree has also argued that this is overwhelming practice compelled by law. As such, the failure to adjust was truly "unintentional" and thus Ancientree's ministerial error allegation was timely and should have been addressed by the agency. The court could either find

---

exhaust its administrative remedies under the statute because this issue was raised before the agency in a ministerial error comment. It is the Department's regulation, not the statute, that specifies that even ministerial errors should have been raised in a case brief if known in the preliminary results. Ancientree R56.2 Br. at 2 & 7.

that the result was compelled by law or remand to the Department to support their statement o appeal that this is not a pure law issue, such as by demonstrating that the failure to make the adjustment was intentional through a meaningful statistical analysis of its previous cases or concede that it was unintentional and correct the error as a ministerial error on remand back to the Court.

## II.  Judicial Estoppel Does not Apply.

Defendant-Intervenor alone argues that the application of judicial estoppel bars Ancientree's claims in this case.  Def-Int Br. at 6.  This argument fails to accurately portray the arguments made in each case and the posture and timing of the litigation.  As Ancientree itself noted in its opening brief, Ancientree had appealed the application of the EBC program in the original countervailing investigation in the ongoing *Dalian* litigation.  When Ancientree took this appeal of the second review and submitted its opening brief, Ancientree' imports in the second review were subject to the 10.54 EBC countervailing rate.  The administrative final determination remains final, even during appeal, until actually overturned.   Thus, Ancientree could not possible presume that due to that ongoing litigation, the 10.54 EBC rate would be removed such that it should not pursue this litigation.  The principle of judicial estoppel simply does not apply to this situation.  Ancientree has not taken inconsistent positions on appeal, but rather both maintains that the EBC rate should not apply to Ancientree; but as it currently does apply to Ancientree, the legally required adjustment must be made.  As things stand now, Ancientree's second review imports are subject to the 10.54 EBC rate in its CVD margin and yet the AD margin was not adjusted for this obvious fact of the Department's own making.

Defendant-Intervenor has misrepresented fundamentally the outcome of the *Dalian* litigation in its response brief.  Defendant-Intervenor states that "After prevailing in the Dalian case, Ancientree's exports of merchandise will no longer be subject to the 10.54% subsidy rate

7

for the EBC program.." Def-Int. Br. at 6. The *Dalian* litigation is not final and the very recent opinion in that case actually does not order the Department to remove the 10.54 EBC subsidy rate completely. Specifically, the Court ordered:

> on remand, for each customer whose non-use of the Program was verified Commerce must determine a customer-specific rate that excludes a subsidy amount for the Program, and recalculate Ancientree's total rate, and the all-others rate. The Department may determine its own method for complying with this order

*Dalian Meisen Woodworking Co., Ltd. v. United States*, 2024 Ct. Intl. Trade LEXIS 89, *34.

The Court did not order the Department to remove the 10.54 subsidy rate for all customers or dictate the complete outcome of the case. The Department must still determine how to comply with the Court's order in the ongoing remand. Further, the *Dalian* litigation involves the investigation, and not the second review. The customers are not all the same in the second review as compared to the original investigation. That litigation is not final and the Court's most recent opinion in that investigation litigation does not include the overstatement in Defendant-Intervenor's response brief that Ancientree's exports in the second review will no longer be subject to the EBC subsidy rate completely.

### III.     Conclusion and Prayer for Relief

In light of the foregoing, the Department's *Final Results* were not accordance with the law.  The Department's error was unintentional, in which case this Court should compel the Department to answer to Ancientree's ministerial error comments. Alternatively, as the law requires the adjustment and there was no critical fact that the Department needed to gather or consider that was not already in its possession in the normal course to make the adjustment compelled by law, the Court can find that exhaustion of administrative remedies is not appropriate under the pure law exception.  As such, the Court should direct a verdict that the adjustment must be made.  Plaintiff respectfully requests that the Court remand this case for redetermination of the issues presented in this brief and its opening brief.

                                              Respectfully submitted,

                                               /s/ Gregory S. Menegaz

                                              Gregory S. Menegaz
                                              Alexandra H. Salzman
                                              Vivien Jinghui Wang[*]
                                              J. Kevin Horgan
                                              **DEKIEFFER & HORGAN, PLLC**
                                              Suite 1101
                                              1156 Fifteenth Street, N.W.  20005
                                              Tel: (202) 783-6900
                                              Fax:  (202) 783-6909
                                              email:  gmenegaz@dhlaw.com

Date: September 25, 2024              *Counsel to Plaintiff*

---

[*] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **2,640** words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth Street., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*