Slip Op. 24-118

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN KITCHEN CABINET ALLIANCE, <br><br> Defendant-Intervenor. | Before: Mark A. Barnett, Chief Judge <br> Court No. 23-00262 |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's final results in the antidumping duty administrative review on wooden cabinets and vanities and components thereof from the People's Republic of China.]

Dated: October 24, 2024

Gregory S. Menegaz, Alexandra H. Salzman, Vivien Jinghui Wang, and J. Kevin Horgan, deKieffer & Horgan, PLLC, of Washington, DC, for Plaintiff.

Collin T. Mathias, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant.  Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director.  Of counsel on the brief was Heather Holman, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Luke A. Meisner and Alessandra A. Palazzolo, Schagrin Associates, of Washington, DC, for Defendant-Intervenor.

Court No. 23-00262    Page 2

     Barnett, Chief Judge:  This case arises out of the U.S. Department of Commerce's ("Commerce" or "the agency") final results in the second administrative review of the antidumping duty ("AD") order on wooden cabinets and vanities and components thereof from the People's Republic of China ("China") for the period of review ("POR") April 1, 2021, through March 31, 2022.  *See Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China*, 88 Fed. Reg. 76,729 (Dep't Commerce Nov. 7, 2023) (final results and final determination of no shipments of the AD admin. rev.; 2021–2022) ("*Final Results*"), ECF No. 16-4.[1]  In particular, this case involves Commerce's rejection of Plaintiff's ministerial error allegation.  *See* Rejection of Untimely Ministerial Error Allegation (Nov. 20, 2023) ("Ministerial Error Mem."), ECF No. 16-6.[2]

     Plaintiff, The Ancientree Cabinet Co., Ltd. ("Ancientree"), seeks judgment on the agency record pursuant to U.S. Court of International Trade ("USCIT") Rule 56.2.  Pl.'s Mot. for J. on the Agency R., ECF No. 28, and accompanying Mem. in Supp. of Mot. for J. Upon the Agency R. ("Pl.'s Mem."), ECF No. 28-2; *see also* Pl.'s Reply Br., ECF No. 31.  Defendant United States ("the Government") and Defendant-Intervenor American

---

[1] The administrative record filed in connection with the *Final Results* is divided into a Revised Public Administrative Record ("Rev. PR"), ECF No. 33-2, and a Confidential Administrative Record ("CR"), ECF No. 33-3.  Parties submitted joint appendices containing record documents cited in their briefs.  *See* Corrected Confid. J.A. ("CJA"), ECF No. 40; Corrected Public J.A., ECF No. 41.  The court references the confidential version of the relevant record documents, unless otherwise specified.

[2] Commerce's final decision memorandum accompanies the *Final Results*, *see* Issues and Decision Mem., A-570-106 (Nov. 1, 2023), ECF No. 16-5, but the issues discussed therein are not contested here.

Kitchen Cabinet Alliance ("the Alliance") urge the court to sustain Commerce's *Final Results*. Def.'s Resp. to [Pl.'s] Rule 56.2 Mot.[] for J. on the Agency R. ("Def.'s Resp."), ECF No. 29; Def.-Int.'s Resp. to Pl.'s Mot. for J. on the Agency R. ("Def.-Int.'s Resp."), ECF No. 30. For the following reasons, the court sustains the *Final Results*.

## BACKGROUND

### I. Proceedings Before Commerce

On June 9, 2022, Commerce initiated the second administrative review of the AD order on wooden cabinets and vanities from China. *Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 87 Fed. Reg. 35,165, 35,173 (Dep't Commerce June 9, 2022), PR 24, CJA Tab 6. Commerce selected Ancientree, a producer and exporter of subject merchandise, as a mandatory respondent. Resp't Selection Mem. at 6 (Sept. 14, 2022), CR 62, PR 101, CJA Tab 7.

Commerce published its preliminary results on May 5, 2023. *Wooden Cabinet and Vanities and Components Thereof From the People's Republic of China*, 88 Fed. Reg. 29,086 (Dep't Commerce May 5, 2023) (prelim. results, prelim. determination of no shipments, and partial rescission of the AD admin. rev.; 2021–2022) ("*Prelim. Results*"), PR 277, CJA Tab 3. Commerce preliminarily calculated a weighted-average dumping margin for Ancientree in the amount of 7.71 percent. *Id.* at 29,088. That margin calculation did not include any upward adjustment to Ancientree's U.S. price pursuant to 19 U.S.C. § 1677a(c)(1)(C) to account for export subsidies countervailed in the

Court No. 23-00262                                                                                                    Page 4

companion countervailing duty ("CVD") order.³  *See* Decision Mem. for the [Prelim. Results] (Apr. 28, 2023) at 21–22, PR 268, CJA Tab 4 (explaining adjustments made to U.S. price).  Commerce directed interested parties to file their case and rebuttal briefs by the deadlines for those submissions.  *Prelim. Results*, 88 Fed. Reg. at 29,088.

Commerce's regulations state that "[c]omments concerning ministerial errors made in the preliminary results of a review should be included in a party's case brief." 19 C.F.R. § 351.224(c)(1).⁴  A ministerial error is "an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which the [agency] considers ministerial."  *Id.* § 351.224(f).  Additionally, an interested party's "case brief must present all arguments that continue in the submitter's view to be relevant to the [agency's] . . . final results."  *Id.* § 351.309(c)(2).  While Ancientree submitted a case brief, that brief did not address 19 U.S.C. § 1677a(c)(1)(C) or Ancientree's position regarding the need for an upward adjustment to U.S. price.  *See* Case Br. (July 10, 2023) ("Ancientree's Case Br."), PR 295, CJA Tab 8 (addressing only surrogate country selection); *see also*

---

³ Section 1677a(c)(1)(C) directs Commerce to increase "[t]he price used to establish export price and constructed export price" by "the amount of any countervailing duty imposed on the subject merchandise . . . to offset an export subsidy."  19 U.S.C. § 1677a(c)(1)(C).  Export price and constructed export price refer to the price at which the subject merchandise is "sold in the United States," *id.* § 1673(1), and may be referred to collectively as "U.S. price."

⁴ Ancientree characterizes Commerce's regulation regarding the exhaustion of ministerial errors as "new."  Pl.'s Mem. at 11.  That regulation, however, was promulgated in 1997.  *See Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,326–27, 27,402 (Dep't Commerce May 19, 1997) (final rule).  The basis for Ancientree's characterization is, thus, unclear.

Rebuttal Br. (July 21, 2023), CR 281, PR 312, CJA Tab 9 (addressing surrogate country and surrogate value selections).

On November 7, 2023, Commerce published the *Final Results*. For the *Final Results*, Ancientree's weighted-average dumping margin increased to 8.26 percent for reasons unrelated to this litigation. 88 Fed. Reg. at 76,730.

On November 13, 2023, Ancientree filed a ministerial error allegation claiming that Commerce failed to increase the company's U.S. price pursuant to 19 U.S.C. § 1677a(c)(1)(C) to account for an export subsidy, the Export Buyers Credit Program ("EBCP"), which was countervailed in the companion CVD order. Ministerial Error Comment (Nov. 13, 2023) at 2–3, PR 337, CJA Tab 11. Commerce characterized this allegation as "an untimely ministerial error allegation." Ministerial Error Mem. at 1. Commerce explained that "[t]he alleged ministerial error referenced in your submission was discoverable earlier in this proceeding (i.e., immediately following the preliminary results) but was not pointed out to Commerce during the period specified by our regulations" and as required by "controlling judicial precedent." *Id.* at 1 & n.1 (citing, *inter alia*, *QVD Food Co. v United States*, 658 F.3d 1318, 1328 (Fed. Cir. 2011), and *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1376–77 (Fed. Cir. 2010)).[5]

---

[5] Commerce relied on the untimeliness of the argument in the Ministerial Error Comment to reject and remove the submission from the record. Ministerial Error Mem. at 2. The court ordered Commerce to reinstate the submission on the record after finding that any untimeliness of the argument was not a proper basis for the agency to remove the submission pursuant to its regulation governing untimely submissions. Order (Sept. 26, 2024), ECF No. 32. No party objected to the Order. Commerce made a corresponding correction to the public administrative record. *See* Rev. PR.

Court No. 23-00262                                                                                                          Page 6

## II.      Parallel Litigation Regarding the Companion CVD Order

In 2020, Commerce issued its final determination in the investigation underlying the companion CVD Order.  *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China*, 85 Fed. Reg. 11,962 (Dep't Commerce Feb. 28, 2020) (final aff. CVD determination) ("*Final CVD Determination*").  Commerce calculated a CVD rate for Ancientree of 13.33 percent.  *Id.* at 11,963.  For the *Final CVD Determination*, Commerce used adverse facts available to find that Ancientree had benefitted from the EBCP and, as such, Ancientree's CVD rate included 10.54 percent, *ad valorem*, to account for the EBCP.  Decision Mem. for Wooden Cabinets and Vanities from China, C-570-107 (Feb. 21, 2020) at 7.[6]  Because Ancientree was not subject to the first or second CVD administrative reviews, the subsidy rate determined in the investigation reflects the amount that Ancientree avers should provide the basis for the adjustment to its U.S. price for this AD review.  *See* Pl.'s Mem. at 6 n.3.

Ancientree appealed the *Final CVD Determination* to the USCIT.  Most recently, the court ordered Commerce to "recalculate Ancientree's total rate" to reflect customer-specific EBCP rates for each of Ancientree's customers for whom Commerce verified nonuse of the program.  *Dalian Meisen Woodworking Co. v. United States*, Slip Op. 24-83, 2024 WL 3580510, at *13 (CIT July 22, 2024).  While the *Dalian* litigation is nonfinal, any such change would result in a lower total EBCP rate.  Ancientree's entries for this

---

[6] While they are not published in the Federal Register, Commerce's decision memoranda are publicly available at https://access.trade.gov/public/FRNoticesListLayout.aspx, with separate links for pre- and post-June 2021 memoranda.

POR are subject to a court-ordered statutory injunction barring liquidation pending a final court decision in the *Dalian* litigation, *see* Order for Statutory Inj. Upon Consent (Oct. 11, 2023) ("*Dalian* Inj."), *Dalian Meisen Woodworking Co. v. United States*, Court No. 20-00110, ECF No. 127, in addition to a statutory injunction in this litigation, *see* Order for Statutory Inj. Upon Consent (Mar. 27, 2024), ECF No. 23.

### III. Proceedings In This Case

Ancientree commenced this action on December 7, 2023. Summons, ECF No. 1. On January 5, 2024, Ancientree filed its complaint. Compl., ECF No. 8. The Alliance timely intervened. Order (Feb. 2, 2024), ECF No. 15. Briefing on Ancientree's motion is complete.[7]

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018), and 28 U.S.C. § 1581(c) (2018).[8] The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

---

[7] Plaintiff and Defendant-Intervenor each moved for oral argument. Unopposed Mot. for Oral Arg. of [the Alliance], ECF No. 37; Pl.'s Unopposed Mot. for Oral Arg., ECF No. 38. After reviewing the briefs filed pursuant to USCIT Rule 56.2, holding a status conference with the Parties, and consistent with USCIT Rule 1 calling for the "just, speedy, and inexpensive determination of every action," the court decides that oral argument is unnecessary. The motions will be denied.

[8] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition unless otherwise specified.

# DISCUSSION

## I. Parties' Contentions

Ancientree contends that Commerce erred as a matter of law when it failed to increase U.S. price by the amount of the EBCP included in that price. Pl.'s Mem. at 4–7. Ancientree further contends that the court should not apply the doctrine of administrative exhaustion and should remand to the agency for correction of this error. *Id.* at 7–10. Ancientree argues that two exceptions to the exhaustion requirement apply: first, that this issue presents a pure question of law; second, that Commerce had the opportunity to consider the issue when Ancientree filed its ministerial error allegation. *Id.* Ancientree further contends that Commerce abused its discretion in denying the ministerial error allegation because other parties received similar upward adjustments to U.S. price without making any request to the agency. *Id.* at 10.

The Government contends that Commerce permissibly denied Ancientree's untimely ministerial error allegation for failure to exhaust administrative remedies regardless of whether that allegation raised a ministerial or substantive issue. Def.'s Resp. at 6–9.[9] For the same reasons, the Government contends, Commerce's denial was not an abuse of discretion and Ancientree provides no examples of Commerce granting similarly belated requests. *Id.* at 10. The Government further contends that the "pure question of law" exception to exhaustion does not apply because "factual development" would have been required, *id.* at 13, including Commerce's "consideration

---

[9] The Government does not concede that the adjustment presented a ministerial issue and noted that Commerce did not reach that question. Def.'s Resp. at 7 n.2.

of the parallel countervailing duty proceeding," *id.* at 14.  The Government argues that Ancientree's ministerial error allegation was an improper vehicle for Commerce to have the opportunity to consider the issue.  *Id.* at 14–15.

The Alliance contends that Ancientree's claim for an export subsidy adjustment is barred by the doctrine of judicial estoppel based on Ancientree's position in the *Dalian* litigation that all or some of its customers (based on certifications of nonuse) did not use the EBCP.  Def.-Int.'s Resp. at 4–7.  The Alliance further contends that Ancientree's ministerial error allegation raised a substantive issue, *id.* at 7–9, but that even if the issue is ministerial, exhaustion was required, *see id.* at 9–15.

In its reply, Plaintiff counters that Commerce's *regulation* requiring the exhaustion of ministerial errors should not prevail over a mandatory *statutory* adjustment.  Pl.'s Reply at 2.  Ancientree also asserts that the *Dalian* litigation does not change the outcome because even if Ancientree had raised the export subsidy adjustment in its case brief, Commerce could not, at that time, have considered the court's more-recent opinions.  *Id.* at 5.

    **II.**    **Commerce's *Final Results* Will Be Sustained**

Ancientree first raised the issue of an EBCP offset to U.S. price in its Ministerial Error Comment.  In rejecting that allegation, Commerce referred to the error as an "alleged ministerial error" and did not engage with the question whether the error should

be considered ministerial or substantive. Ministerial Error Mem. at 1.[10] That omission is immaterial here: under either scenario, the doctrine of administrative exhaustion applies.[11]

"[T]he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The statute "indicates a congressional intent that, absent a *strong* contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (emphasis added). The doctrine of administrative exhaustion is well-settled and requires a party to raise issues with specificity and "at the time appropriate under [an agency's] practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36–37 (1952). Doing so both "protect[s] administrative agency authority and promot[es] judicial efficiency." *Corus Staal BV*, 502 F.3d at 1379 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

In this case, as noted above, Commerce's regulations required Ancientree to identify any ministerial errors in the preliminary results of the review and otherwise make all relevant arguments about those preliminary results in its administrative case brief. 19 C.F.R. §§ 351.224(c)(1), 351.309(c)(2). Ancientree failed to use that

---

[10] To the extent Commerce treated the error as ministerial and the error is properly characterized as substantive, such treatment would be harmless error because the doctrine of administrative exhaustion applies to both types of errors. *See Intercargo Ins. Co. v. United States*, 83 F.3d 391, 394 (Fed. Cir. 1996) ("It is well settled that principles of harmless error apply to the review of agency proceedings.").

[11] Because the court resolves the present dispute pursuant to the doctrine of administrative exhaustion, the court does not address the Alliance's arguments regarding the doctrine of judicial estoppel.

opportunity to request an export subsidy offset to U.S. price, but now seeks a court-ordered remand for the agency to make that adjustment. Pl.'s Mem. at 12. However, Commerce acts within its discretion when it declines to address errors untimely alleged, whether substantive or ministerial. *See QVD Food Co.*, 658 F.3d at 1328 (sustaining agency decision not to correct an untimely allegation of substantive error characterized as a ministerial error and noting the outcome would be the same if it were a ministerial error); *Dorbest*, 604 F.3d at 1377 (sustaining agency decision not to correct an untimely allegation of ministerial error involving a raw material expense).

Ancientree seeks to distinguish these cases based on the "methodological" nature of the corresponding alleged errors. Pl.'s Reply at 2–3. *Dorbest* addresses both substantive and ministerial errors and found both to be waived when not timely raised. 604 F.3d at 1375–77. The *QVD Food Co.* court addressed a substantive error but found in the alternative that even if the alleged error was ministerial, Commerce did not abuse its discretion in declining to address the untimely allegation. 658 F.3d at 1328. Thus, the nature of the alleged error does not alter the exhaustion requirement.

Additionally, no exception to the exhaustion doctrine excuses Ancientree's untimeliness. The "pure question of law" exception may apply when the argument "requir[es] neither further agency involvement nor additional fact finding or opening up the record, and the inquiry must neither create undue delay nor cause expenditure of scarce party time and resources." *Thai I-Mei Frozen Foods Co. v. United States*, 31 CIT 334, 359, 477 F. Supp. 2d 1332, 1354–55 (2007). Further, the court may decline to require exhaustion when Commerce otherwise had the opportunity to consider the

issue. *See, e.g.*, *Jacobi Carbons AB v. United States*, 42 CIT __, __, 313 F. Supp. 3d 1308, 1330 (2018). Neither circumstance applies here.

First, Ancientree's request for an export subsidy offset to U.S. price does not—at least in this case—implicate a pure question of law. Pursuant to 19 U.S.C. § 1677a(c)(1)(C), "[t]he price used to establish" U.S. price "shall be . . . increased by . . . the amount of any countervailing duty imposed on the subject merchandise . . . to offset an export subsidy." Here, however, when Ancientree filed its administrative case brief, the "amount" of the countervailing duty imposed on Ancientree's subject entries was nonfinal pending resolution of the *Dalian* litigation. *See* Pl.'s Mem. at 6 nn.3–4.[12] Thus, in addition to potentially reopening the record to substantiate the basis for an increase to U.S. price, Commerce would have had to grapple with the question whether to make the adjustment when the subsidy rate is subject to litigation. *See* Def.'s Resp. at 13–14 (arguing that the adjustment would require factual development and consideration of the parallel CVD proceeding); Def.-Int.'s Resp. at 18 (arguing that litigation regarding the parallel CVD proceeding "call[s] into question whether any adjustment to export price based on the EBC program is warranted" and what any such "adjustment should be").

---

[12] To the extent that Ancientree's CVD cash-deposit rate included an amount that reflected the EBCP rate from the *Final CVD Determination*, any change to the EBCP rate as a result of the *Dalian* litigation will impact Ancientree's CVD assessment rate for entries covered by the instant POR by operation of the *Dalian* Injunction (and, thus, potentially a corresponding partial refund of the cash deposits). A lower assessment rate on the CVD side presumably lowers the amount properly used as the basis for the export subsidy offset to U.S. price on the AD side, reinforcing the need for Ancientree to have raised this issue in a timely manner so that Commerce could determine, in the first instance, how to address any relationship between these determinations.

Ancientree provides no excuse for its failure to include the issue in its case brief, leading to the conclusion that consideration of the issue now would "create undue delay" and "cause expenditure of scarce party time and resources." *Thai I-Mei Frozen Foods Co.*, 31 CIT at 359, 477 F. Supp. 2d at 1354–55.

Second, the cases in which the court declined to require exhaustion because Commerce had the opportunity to consider the issue generally involved the *timely* raising of related issues in the normal course of the administrative proceeding. *See, e.g.*, *Jacobi Carbons* 313 F. Supp. 3d at 1330 (exhaustion not required when the plaintiff raised the issue of countervailable subsidies in its case brief in relation to a 2010 set of financial statements and Commerce also reviewed the 2011 set of statements for evidence of subsidies); *Zhaoqing Tifo New Fibre Co. v. United States*, 39 CIT __, __, 60 F. Supp. 3d 1328, 1353–59 (2015) (excusing the plaintiff's failure to present its arguments regarding the potential for double counting of certain energy inputs to the agency when the petitioner raised the issue in its administrative rebuttal brief and Commerce considered the issue with respect to other energy inputs). This exception does not override the requirement to raise ministerial or other errors "at the time appropriate under [an agency's] practice." *L.A. Tucker Truck Lines*, 344 U.S. at 36–37.

Lastly, Ancientree's argument that the statutory nature of the adjustment must prevail over a Commerce regulation requiring exhaustion is not persuasive. *See* Pl.'s Mem. at 11 (citing *Goodluck India Ltd. v. United States*, 47 CIT __, __, 670 F. Supp. 3d 1353, 1382 (2023)); Pl.'s Reply at 2 (citing same). *Goodluck India* rejected an

Court No. 23-00262                                                                                                                       Page 14

interpretation of Commerce's regulation governing the assessment of duties, 19 C.F.R. § 351.212(c), that would result in a conflict with Commerce's statutory requirement to liquidate entries consistent with a final court decision pursuant to 19 U.S.C. § 1516a(e). 670 F. Supp. 3d at 1381–82. Nowhere did the court suggest that statutory adjustments are beyond the purview of administrative exhaustion, which is not only required by regulation but, by statute, may also be required by the court.

Ancientree also relies on *Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318 (Fed. Cir. 2020), and associated lower court decisions, Pl.'s Mem. at 5–6, but those cases are inapposite. While the appellate court held that Commerce erred when it declined to increase the respondent's U.S. price to offset a subsidy program countervailed in the companion CVD order pursuant to 19 U.S.C. § 1677a(c)(1)(C), Commerce's decision memorandum reflected the agency's consideration of, and explanation regarding, the issue. *Changzhou Trina*, 975 F.3d at 1324, 1327–28. Thus, the court did not have occasion to address the adjustment in the context of administrative exhaustion. Moreover, Ancientree's suggestion that exhaustion is not required simply because it claims Commerce's decision was not in accordance with law would unreasonably constrain the purpose of administrative exhaustion.

### CONCLUSION AND ORDER

Regardless of the type of error, substantive or ministerial, Ancientree was required to exhaust its administrative remedies. Because Ancientree failed so to do, and in the absence of any applicable exception to the exhaustion doctrine, the court will


Court No. 23-00262                                                                                                                                                Page 15

sustain Commerce's *Final Results*. Plaintiff's and Defendant-Intervenor's motions for oral argument, ECF Nos. 37, 38, are hereby **DENIED**. Judgment will enter accordingly.

                                            /s/     Mark A. Barnett
                                          Mark A. Barnett, Chief Judge

Dated: October 24, 2024
       New York, New York